NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000812
26-FEB-2015
08:50 AM**

NO. CAAP-11-0000812

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CHARLES P. POUONO, Claimant-Appellee/Appellant, v. DAIICHIYA-LOVES BAKERY, INC., and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, Employer/Insurance Carrier-Appellant/Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2009-076 (2-08-00965))

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

In this secondary appeal, Claimant-Appellee/Appellant Charles P. Pouono (Pouono) appeals from the Labor and Industrial Relations Appeals Board's (Board) October 17, 2011 Decision and Order (Decision and Order) reversing the Director of the Department of Labor and Industrial Relations' Decision sustaining Pouono's claim for workers' compensation benefits from Employer-Appellant/Appellee Daiichiya-Loves Bakery, Inc. (Daiichiya-Loves), and Insurance Carrier-Appellant/Appellee Travelers Property Casualty Company of America.[1]

The Board ruled in Daiichiya-Loves's favor on the following issues as defined by the Board:

> (1)  Whether [Pouono] sustained a personal injury to the left hip on December 10, 2007, arising out of and in the course of employment; and if so,

---

[1]  Roland Q.F. Thom was Chairman of the Board, with Melanie S. Matsui and David A. Pendleton as members.

(2) Whether [Pouono] is entitled to and [Daiichiya-Loves is] liable for [Pouono's] total hip replacement surgery.

On appeal, Pouono essentially argues that the Board failed to properly apply the presumption of compensability set forth in Hawaii Revised Statutes (HRS) § 386-85 (1993)[2] and that the Board erroneously concluded that Daiichiya-Loves presented substantial evidence to rebut the presumption.

After reviewing the record on appeal, the points raised, the parties' arguments and the applicable legal authority, we affirm.

We begin with the presumption that Pouono's claim for hip replacement surgery due to a hip injury is a covered work injury and then examine the record to determine whether Daiichiya-Loves was able to meet its heavy burden of providing substantial evidence to overcome the presumption. Van Ness v. State of Hawai'i, 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014).

The Board clearly acknowledged that it was required to apply the presumption of compensability, and thus, there is no question that the Board was aware of the correct legal standard. The issue on appeal is whether the Board properly applied the presumption.

Daiichiya-Loves "bore the initial burden of providing substantial evidence to rebut the presumption" that Pouono's work activities contributed to the collapse of his femoral head, which in turn led to the hip replacement surgery. Nakamura v. State, 98 Hawai'i 263, 268, 47 P.3d 730, 735 (2002). If Pouono's employment activity at work caused "the slightest aggravation or acceleration" of his injury, he was entitled to compensation. Van Ness, 131 Hawai'i at 562, 319 P.3d at 481 (citation and

---

[2]     HRS § 386-85 provides, in relevant part:

§386-85 Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury[.]

internal quotation marks omitted; emphasis added).

Four out of the five doctors rendering opinions in this case agreed that Pouono had developed avascular necrosis as a result of a February 2007 motor vehicle accident (MVA). As the Board found,

> [a]vascular necrosis is progressive bone death caused by a disruption in blood supply. Bone that is dying becomes weak and loses its ability to support weight. Avascular necrosis in the hip could develop over time and may lead to collapse of the femoral head.
>
> 14. Avascular necrosis of the femoral head is a common sequelae of left acetabular fracture and dislocation of the hip. [Pouono's] serious fracture and dislocation of the left hip in the February 2007 MVA caused sufficient trauma to blood vessels in the hip and likely interrupted the blood supply to the femoral head.

The issue for the physicians was whether avascular necrosis could be aggravated or accelerated by weight-bearing activities, such as those performed by Pouono at work. Drs. Lau and Scoggin, who conducted independent medical examinations and an independent medical records review respectively, answered in the negative.

The Board concluded that Pouono's left femoral head collapse was not work-connected and therefore his total hip replacement surgery was not a compensable consequence. "[A] conclusion of law will not be overturned if supported by the trial court's findings of fact and by the application of the correct rule of law." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 93, 34 P.3d 16, 23 (2001).

The Board's finding of non-compensability is consistent with Van Ness because the Board credited the medical testimony that Pouono's work activities did not even slightly aggravate or accelerate his pre-existing underlying condition of avascular necrosis that led to his left femoral head collapse. The medical opinions of orthopedic surgeons Drs. Lau and Scoggin supported Daiichiya-Loves's position that Pouono's avascular necrosis was not work-related. Drs. Lau and Scoggin each individually prepared detailed reports that explained avascular necrosis, concluded that Pouono's avascular necrosis could not be

aggravated or accelerated by weight-bearing activities at work, and explained their reasoning for rejecting Pouono's contention that alleged work-related activities caused him to aggravate his condition and precipitated his need to undergo hip replacement surgery at an earlier date.

We conclude that the medical opinions of Drs. Lau and Scoggin concerning the cause of Pouono's femoral head collapse provided a sufficient degree of specificity to rebut the presumption of compensability and was more than a mere "generalized medical opinion" about Pouono's pre-existing condition. See Nakamura, 98 Hawai'i at 268-69, 47 P.3d at 735-36. The primary focus of the medical testimony was a specific discussion on whether Pouono's employment effort, whether great or little, in any way aggravated his avascular necrosis which resulted in his femoral head collapse.

Given the foregoing evidence, we conclude that Daiichiya-Loves presented substantial evidence that, as accepted by the trier of fact, was sufficient to rebut the presumption of compensability and to show that Pouono's avascular necrosis was not caused, aggravated, or accelerated by his work activities. These medical opinions constitute "a high quantum of evidence[,]" which was "relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable [person] that [Pouono's hip] injury . . . [wa]s not work connected." Igawa v. Koa House Rest., 97 Hawai'i 402, 407, 38 P.3d 570, 575 (2001) (citation and internal quotation marks omitted).

> [H]aving concluded that [Daiichiya-Loves] adduced substantial evidence which, if true, could rebut the presumption of compensability, we review the Board's decision in light of our deference to its role in assessing the relative credibility and weight of the evidence for and against compensability, mindful that [Daiichiya-Loves] bears the burden of persuasion as to which [Pouono] should be given the benefit of the doubt.

Nakamura, 98 Hawai'i at 270, 47 P.3d at 737.

When reviewing the Board's decision on the issue of compensability, we must give deference to the Board's

determinations regarding the witness credibility and evidentiary weight, and we conclude that the Board did not err in ruling that Pouono's hip injury was not compensable. <u>Panoke v. Reef Dev.</u>, 113 Hawai'i 449, 329 P.3d 354, No. CAAP-11-0000556 2014 WL 2949410 at *2 (App. June 30, 2014) (SDO) (citing <u>Moi v. State, Dep't of Pub. Safety</u>, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008)); <u>Nakamura</u>, 98 Hawai'i at 268, 47 P.3d at 735; and <u>Igawa</u>, 97 Hawai'i at 409-10, 38 P.3d at 577-78. The Board explicitly found that it believed Drs. Lau and Scoggin. It did not accept as credible the opinions of Drs. Uhr, Murray, and Nadamoto that work aggravated Pouono's condition and gave its rationale for discounting these opinions.

The conflicting medical evidence regarding the cause of injury was not of equal weight and effect, and therefore, the Board did not err in reconciling the evidence presented in favor of Daiichiya-Loves. <u>See</u> <u>Nakamura</u>, 98 Hawai'i at 270, 47 P.3d at 737 (interpreting <u>Chung v. Animal Clinic, Inc.</u>, 63 Haw. 642, 636 P.2d 721, (1981), to stand for the proposition that credible conflicting testimony should be resolved in favor of the claimant when the conflicting evidence regarding causation is of "equal weight and effect").

Based on the foregoing, we affirm the October 17, 2011 Decision and Order entered by the Labor and Industrial Relations Appeals Board.

DATED: Honolulu, Hawai'i, February 26, 2015.

On the briefs:

Herbert R. Takahashi
Rebecca L. Covert
Davina W. Lam
(Takahashi & Covert)
for
Claimant-Appellee/Appellant.

Kenneth T. Goya
Steven L. Goto
(Ayabe, Chong, Nishimoto, Sia, & Nakamura)
for Employer-Insurance
Carrier-Appellant/Appellee.

Chief Judge

Associate Judge

Associate Judge

5